UNITED STATES BANKRUPTCY COURT
EASTERN DISTRICT OF MICHIGAN
SOUTHERN DIVISION - FLINT

IN RE:

    BEVERLY JUNE KENT,                  Case No. 14-31499-dof
                                                         Chapter 7 Proceeding
        Debtor.                              Hon. Daniel S. Opperman
_____/

## OPINION SUSTAINING THE OBJECTION TO CLAIM OF WARREN MARMORSTEIN AND DENYING WARREN MARMORSTEIN'S MOTION FOR ADMINISTRATIVE EXPENSES

### Introduction

Warren Marmorstein filed a Motion for Administrative Expenses pursuant to 11 U.S.C. § 503(b) in this Chapter 7 proceeding. Samuel D. Sweet, the Trustee in this case, objects to the Motion and argues that Mr. Marmorstein is not a creditor of the debtor and is therefore not entitled to an award of administrative expenses. The uncertainty surrounding whether Mr. Marmorstein is a creditor arises from a pending Objection to a Proof of Claim of Mr. Marmorstein. The Objection to the claim was originally brought by Debtor, Beverly June Kent, but later assigned to the bankruptcy estate. For the reasons stated in this Opinion, the Court sustains the Objection to the Claim of Mr. Marmorstein and conditionally denies Mr. Marmorstein's Motion for Administrative Expenses.

### Procedural Background and Facts

Debtor filed a voluntary petition under Chapter 7 of the United States Bankruptcy Code on May 20, 2014. Mr. Marmorstein filed a Proof of Claim in this case on November 3, 2014, in the amount of $284,736.83, consisting of $185,000.00 in principal, $48,091.00 in attorney fees and court costs, and $51,645.83 in interest. The other unsecured claims in this case consist of

1

two small claims in the total amount of $566 as well as the State of Michigan's amended tax claim in the amount of $3,275.[1]

Mr. Marmorstein's claim arises out of an action commenced by him against Debtor in the United States District Court for the Eastern District of Michigan. The factual allegations made by Mr. Marmorstein date back to a series of loans made by him to Debtor's son, Robert Kent. According to Mr. Marmorstein, Robert Kent requested a loan so that he could invest in a nightclub in Florida. During their conversations about the loan, Robert Kent told Mr. Marmorstein that his mother was wealthy because his father had sold his interest in a drugstore chain to Rite Aid for $4,000,000.00. After Mr. Marmorstein met with the owners of the nightclub and inspected the site, he met with Robert Kent at a bank to discuss the loan and possibly give him a check. During their meeting, he expressed his concern that Robert Kent would not have the funds to repay the loans. Robert Kent assured him that if he did not repay, his mother would. Robert Kent called Debtor from his cellular phone and Mr. Marmorstein had a conversation with her during which she allegedly guaranteed the loans for her son and stated that she would sign a personal guarantee. Mr. Marmorstein loaned Robert Kent $75,000 in July 2008 to be repaid in October 2008, $80,000 in August 2008 to be repaid later that month, and $30,000 in August 2008 to be repaid in September 2008. Robert Kent later delivered a written agreement to Mr. Marmorstein allegedly signed by Debtor on October 22, 2008, to guarantee the loans owed by her son. Robert Kent did not pay the debts owed to Mr. Marmorstein, so Mr. Marmorstein sought and obtained a Default Final Judgment in the amount of $230,410.00 against him in state court. To date, no judgment has been entered against Debtor regarding this claim. Mr. Marmorstein's amended complaint in District Court alleged breach of personal

---

[1] The tax claim was originally in the amount of $9,852.63 but was later amended twice.

guarantee, breach of verbal contract, breach of implied contract/unjust enrichment, promissory estoppel, innocent misrepresentation, and fraud based upon the written and oral guarantees allegedly made by Debtor.

On May 6, 2016, after an Opinion issued by this Court the date prior, the Court entered an Order granting Mr. Marmorstein derivative standing in place of the Chapter 7 Trustee to institute an adversary proceeding on behalf of the bankruptcy estate against three of Debtor's family members to recover alleged fraudulent transfers that were made to them by Debtor prior to her bankruptcy filing. In that Order, the Court also denied Mr. Marmorstein's request to compel the Trustee to file such an adversary proceeding and denied the Chapter 7 Trustee's request to sell the avoidance action to Mr. Marmorstein. On May 16, 2016, Mr. Marmorstein commenced that adversary proceeding, seeking to recover $192,000.00 for the estate from Debtor's family members, Randall Kent, Ronalee Kent, and Richard Kent. Upon motion by Mr. Marmorstein, the Court entered an Order dated June 14, 2016, allowing Mr. Marmorstein to retain counsel in the adversary proceeding.

Debtor filed an Objection to Mr. Marmorstein's claim on June 30, 2016. She asserted that she did not guarantee the loans for Robert Kent and that the document relied upon by Mr. Marmorstein purporting to demonstrate her status as a guarantor of the debt was either a forgery or altered. To support her argument, she included the analysis of a "forensic document analyst" who opined that the signature was a cut and paste reproduction of her signature from another document. Debtor further asserted that any alternative argument as to an oral guarantee Mr. Marmorstein may have made fails under the statute of frauds. In response, Mr. Marmorstein asserted that the forensic opinion was obtained by Debtor during the District Court action, and that he did not have the opportunity to obtain his own expert opinion. Instead, he argued that

3

14-31499-dof    Doc 126    Filed 05/14/18    Entered 05/14/18 16:45:09    Page 3 of 13

Debtor did not have standing to object to the claim. In an Opinion dated January 6, 2017, the Court held that because there was a reasonable potential for a surplus estate, Debtor had standing to object to Mr. Marmorstein's Proof of Claim.

On February 16, 2017, Mr. Marmorstein filed with the Court a Motion for Approval of Proposed Settlement. According to the terms of the proposed settlement, Mr. Marmorstein would not appeal the Opinion giving Debtor standing to object to the claim, and in return, he would be paid $10,000.00 by the defendants in the adversary proceeding. Mr. Marmorstein would also withdraw his claim and the adversary proceeding would be dismissed. The Trustee vehemently objected to this settlement, arguing that Mr. Marmorstein was using his derivative standing in the adversary proceeding to benefit his own cause to the detriment of the estate. On April 28, 2017, the Court entered an Order denying the Motion for approval of the settlement and substituting Mr. Marmorstein with the Trustee in the adversary proceeding.

The Trustee filed a Motion for Approval of a Settlement Agreement with the Court on June 21, 2017. Under the terms of this settlement, the defendants in the adversary proceeding would pay the estate $15,000.00 and, in exchange, the adversary proceeding would be dismissed. The settlement agreement also put forth that the Debtor would assign her rights in and to the Objection to the Proof of Claim to the estate. Mr. Marmorstein objected to the settlement in the absence of confirmation that $10,000.00 would be paid to him. On August 2, 2017, the Court entered an Order overruling Mr. Marmorstein's objection to the settlement and granting the Trustee's Motion for approval of the settlement. On October 31, 2017, the Court entered an Order assigning the Objection to the claim of Mr. Marmorstein to the estate.

On November 28, 2017, Mr. Marmorstein filed a Motion for Administrative Expenses pursuant to 11 U.S.C. § 503(b) and requested an award in the total amount of $12,899.35. Of

4

14-31499-dof    Doc 126    Filed 05/14/18    Entered 05/14/18 16:45:09    Page 4 of 13

that amount, $2,080.00 in attorney's fees and $470.00 in filing and service fees were allegedly incurred while instituting and litigating the adversary proceeding filed against Debtor's family members, and $9,840.00 in attorney's fees and $509.35 in costs were allegedly incurred during the discovery requests[2] that led to the detection of the alleged fraudulent transfers, which formed the basis for the adversary proceeding. The Trustee objected to the Motion, asserting that Mr. Marmorstein's efforts were undertaken to benefit himself and not the estate and that he is not a creditor of the debtor and is therefore not entitled to an administrative expense claim. Mr. Marmorstein replied, arguing that as a creditor who made a substantial contribution to the bankruptcy estate, he is entitled to administrative expenses. Mr. Marmorstein further argued that he is a creditor because there was an alleged oral guarantee and there are two exceptions to the requirement of a written guarantee under Michigan law.

The Court held a hearing on January 3, 2018, regarding the Motion for Administrative Expenses. After hearing arguments by counsel for Mr. Marmorstein and the Trustee, the Court allowed the parties to file supplemental briefs to further explain their positions.

## Jurisdiction

This Court has subject matter jurisdiction over this proceeding under 28 U.S.C. §§ 1334(b), 157(a), and 157(b)(1) and E. D. Mich. LR 83.50(a). This is a core proceeding pursuant to 28 U.S.C. § 157(b)(2)(A) (matters concerning the administration of the estate) and (B) (allowance or disallowance of claims against the estate).

---

[2] Mr. Marmorstein took the exams of Debtor and Randy Kent and subpoenaed records from banks and other third parties.

Law and Analysis

A. Objection to Proof of Claim

Michigan law requires a writing for certain agreements:

(1) In the following cases an agreement, contract, or promise is void unless that agreement, contract, or promise, or a note or memorandum of the agreement, contract, or promise is in writing and signed with an authorized signature by the party to be charged with the agreement, contract, or promise:
. . . .
(b) A special promise to answer for the debt, default, or misdoings of another person.

Mich. Comp. Laws § 566.132. Verbal statements collateral to and preceding a written agreement are void under the statute of frauds and are "not to be considered as any part of the agreement of the parties." *Wiseman v. United Dairies, Inc.*, 37 N.W.2d 174, 181 (Mich. 1949) (holding that a verbal undertaking of liability by one entity on behalf of another was superseded by the written agreement and void under the statute of frauds).

Here, the written guarantee allegedly signed by Debtor is invalid. Indeed, Mr. Marmorstein has abandoned any arguments he may have had based upon the written agreement and is instead relying on the oral guarantee allegedly made by Debtor. Assuming Debtor did in fact make this promise, it is void under the statute of frauds. Mr. Marmorstein argues, however, that there are two exceptions to the requirement of a written guarantee under Michigan law that are applicable here.

Mr. Marmorstein first argues that the statute of frauds may not be used a defense to an oral contract when the result would be fraud based upon the case of *Kent v. Bell*, 132 N.W.2d 601 (Mich. 1965). That case, however, involved an oral contract to devise real estate in exchange for services provided and a cause of action for specific performance. *Id.* at 604. The court based its holding, in part, on the doctrine of part performance. *See id.* at 605. The facts of

*Kent* differ drastically from the facts we have here. When faced with a contract in an employment context, the Michigan Supreme Court reasoned that because "the doctrine of part performance has historically been applied only to contracts involving the sale of land," it was inapplicable to that case. *Dumas v. Auto Club Ins. Ass'n*, 473 N.W.2d 652, 660-61 (Mich. 1991) (citation omitted). Likewise, the Court finds that the exception recognized in *Kent* does not apply to this case.

Mr. Marmorstein next argues that the second exception to the statute of frauds is equitable estoppel based upon the case of *Kelly-Stehney & Assocs. v. MacDonald's Indus. Prods., Inc.*, 658 N.W.2d 494 (Mich. Ct. App. 2003), *vacated*, 677 N.W.2d 838 (Mich. 2004). In that case, however, the court heavily criticized judicially created exceptions to the statute of frauds, such as equitable estoppel. *Id.* at 499. And while the Michigan Supreme Court originally granted leave to appeal that case on the issue of whether equitable estoppel could be used as an exception to the statute of frauds, it ultimately vacated the court of appeals decision and remanded the case to the lower courts for a decision based upon a statute of frauds analysis. *Kelly-Stehney & Assocs., Inc.*, 677 N.W.2d at 838. Moreover, most of the case law regarding the doctrine of equitable estoppel was developed based upon the common law statute of frauds and not Mich. Comp. Laws § 566.132. *See Winters v. Deutsche Bank Nat'l Trust Co.*, No. 15-13456, 2016 U.S. Dist. LEXIS 141610, at *10 (E.D. Mich. Sept. 14, 2016) (noting that the "plethora of case law" regarding promissory estoppel cited by the parties "refer[red] to the common law statute of frauds, not the statutory scheme adopted by the Michigan state legislature . . . effective January 1, 1993").

Because the doctrine of equitable estoppel may still be viable under Michigan law, the Court will consider its application to this case. The elements of equitable estoppel are as

follows: "(1) a party, by representations, admissions, or silence intentionally or negligently induces another party to believe facts, (2) the other party justifiably relies and acts on that belief, and (3) the other party is prejudiced if the first party is allowed to deny the existence of those facts." *Lakeside Oakland Dev., L.C. v. H & J Beef Co.*, 644 N.W.2d 765, 770-71 (Mich. Ct. App. 2002). Moreover, "[w]here a defense under a statute of frauds is raised, the rule is that one must have acted to his detriment solely in reliance on the oral agreement." *Crest the Uniform Co. v. Foley*, 806 F. Supp. 164, 169 (E.D. Mich. 1992).

The Court finds that the facts alleged by Mr. Marmorstein do not support a finding that he acted solely in reliance on Debtor's promise. When Mr. Marmorstein met Robert Kent at the bank to discuss the loan and possibly give him a check, he had already spoken to the owners of the nightclub Robert Kent was to invest his money in and visited the site. During their meeting, Mr. Marmorstein expressed concern that Robert Kent would not have the funds to repay him, but Robert Kent reassured him that if he did not repay, his mother would. It was at this point that the phone call to Debtor was made.

Nor do the facts support an inference that Mr. Marmorstein's reliance on Debtor's oral promise was justifiable. Mr. Marmorstein did not know Debtor and had never met her when he spoke to her over the phone. Robert Kent called her on his cellular phone and thus Mr. Marmorstein was relying entirely on his representations as to who was on the other side of the line.[3] During the phone conversation, Debtor allegedly guaranteed any loans made to her son and stated that she would sign a personal guarantee. After the initial loan of $75,000 was made, however, no personal guarantee was signed, and, yet, Mr. Marmorstein made two additional

---

[3] Now, Mr. Marmorstein claims that he is certain he spoke to Debtor because he participated in her deposition in April of 2013 and can identify her voice as the person he spoke to. Thus, admittedly, up until that time, he had no idea who he had spoken to in July of 2008.

8

loans—in the amounts of $80,000 and $30,000—to Robert Kent the following month. It was only after the time to repay the loans had come and gone that the written agreement was delivered to Mr. Marmorstein by Robert Kent. In light of these facts, the Court finds that the doctrine of equitable estoppel is inapplicable to this case. *See, e.g.*, *Liberty Mut. Ins. Co. v. Consol. Elec. & Tech. Assocs. Corp.*, No. 06-CV-10217-DT, 2007 U.S. Dist. LEXIS 1791, at *11-12 (E.D. Mich. Jan. 10, 2007) (finding "no equitable basis for avoiding application of the statute of frauds" when the plaintiff issued a bond based on an oral agreement, later increased the amount of the bond, never followed up to obtain an executed indemnity agreement, and took no action until a claim was made against the bond).

Because the Court finds that any exceptions to the statute of frauds that may exist under Michigan law do not apply to this case, the alleged oral guarantee is void. Thus, not only can it not be the basis for a breach of contract claim, but also all of Mr. Marmorstein's remaining claims must fail as well. *See, e.g.*, *Crown Tech. Park v. D&N Bank, F.S.B.*, 619 N.W.2d 66, 73-74 (Mich. Ct. App. 2000) (holding that no relief was available for the plaintiff's promissory estoppel and negligence claims because they were dependent on the enforcement of an oral promise that was barred by the statute of frauds). The Court therefore sustains the Objection to the Proof of Claim of Mr. Marmorstein and disallows his claim in this Chapter 7 proceeding.

B. <u>Motion for Administrative Expenses</u>

"The Bankruptcy Code grants priority to certain administrative expenses, such as 'the actual, necessary costs and expenses of preserving the estate, including wages, salaries, or commissions for services rendered after the commencement of the case.'" *Pension Benefit Guar. Corp. v. Sunarhauserman, Inc. (In re Sunarhauserman, Inc.)*, 126 F.3d 811, 816 (6th Cir. 1997) (quoting 11 U.S.C. § 503(b)(1)(A)). The "well-accepted 'benefit to the estate' test . . . states that

a debt qualifies as an 'actual, necessary' administrative expense only if (1) it arose from a transaction with the bankruptcy estate and (2) directly and substantially benefitted the estate." *Id.* at 816 (citations omitted). "The benefit to the estate test limits administrative claims to those where the consideration for the claim was received during the post-petition period." *Id.* "Claims for administrative expenses under § 503(b) are strictly construed because priority claims reduce the funds available for creditors and other claimants." *City of White Plains v. A & S Galleria Real Estate, Inc. (In re Federated Dep't Stores, Inc.)*, 270 F.3d 994, 1000 (6th Cir. 2001) (citations omitted).

Creditors who make a substantial contribution in Chapter 9 and 11 cases are entitled to administrative expenses for reasonable fees and expenses under § 503(b)(3)(D) and (4). The Sixth Circuit Court of Appeals has held that creditors in Chapter 7 proceedings whose efforts substantially benefit the bankruptcy estate and its creditors are similarly entitled to administrative expenses. *Mediofactoring v. McDermott (In re Connolly N. Am., LLC)*, 802 F.3d 810, 819 (6th Cir. 2015). Because the Court has disallowed the claim of Mr. Marmorstein in this case, he is not a creditor and is therefore not entitled to an award of administrative expenses pursuant to *Mediofactoring*. Assuming arguendo, however, that Mr. Marmorstein is a creditor, the Court continues its analysis of whether he is entitled to recover administration expenses.

The "principal test" of what constitutes a substantial contribution is "the extent of benefit to the estate." *In re AmFin Fin. Corp.*, 468 B.R. 827, 832 (Bankr. N.D. Ohio 2012) (quoting *Cellular 101, Inc. v. Channel Commc'ns, Inc. (In re Cellular 101, Inc.)*, 377 F.3d 1092, 1096 (9th Cir. 2004)). "The focus is on 'whether the efforts of the applicant resulted in an actual and demonstrable benefit to the debtor's estate and the creditors.'" *Id.* at 832 (quoting *Haskins v. United States (In re Lister)*, 846 F.2d 55, 57 (10th Cir. 1988)). Some factors courts consider

10

when making a determination of whether a creditor has made a substantial contribution are "whether the services were provided to benefit the estate itself or all of the parties in the bankruptcy case; whether the services conferred a direct, significant, and demonstrably positive benefit upon the estate; and whether the services were duplicative of services performed by others." *Id.* at 832 (quoting *In re Best Prods. Co.*, 173 B.R. 862, 865 (Bankr. S.D.N.Y. 1994)). Some courts also consider the creditor's self-interest as a factor in their analysis.[4] *See, e.g., Pacificorp Ky. Energy Corp. v. Big Rivers Elec. Corp. (In re Big Rivers Elec. Corp.)*, 233 B.R. 739, 747-48 (W.D. Ky. 1998).

This case is akin to a one creditor case. At the outset of the case, Mr. Marmorstein's claim was in the amount of $284,736.83, while the remaining claims were in the total amount of approximately $10,500.[5] Mr. Marmorstein made the discovery requests because he was hoping to collect on his claim. When he discovered the alleged fraudulent transfers, the Trustee refused to file an adversary proceeding because of the substantial costs it would involve. Yet, Mr. Marmorstein filed a motion to compel the Trustee to do so or, in the alternative, allowing him to file the adversary proceeding on behalf of the bankruptcy estate. The Trustee was forced to respond to the motion and incur costs in doing so. Ultimately, the Court granted Mr. Marmorstein derivative standing to bring the action, but the initial settlement he put forth

---

[4] The Sixth Circuit Court of Appeals has not spoken on the issue of what weight, if any, is to be given to a creditor's self-interest. There appears, however, to be a circuit split on the issue. *Compare Lebron v. Mechem Fin.*, 27 F.3d 937, 946 (3d Cir. 1994) (reasoning that "unless the court is able to find that [the creditor's] actions were designed to benefit others who would foreseeably be interested in the estate," "there can be no award of expenses even though there may have been an incidental benefit" to the estate) *with Speights & Runyan v. Celotex Corp. (In re Celotex Corp.)*, 227 F.3d 1336, 1339 (11th Cir. 2000) (holding that a creditor's motive in taking actions that benefit the estate has "little relevance" in the determination of whether the creditor has a made a substantial contribution to the estate) (citation omitted).

[5] The state of Michigan's tax claim has since been amended. Currently, the remaining claims are in the total amount of less than $4,000.

proposed that the entire $10,000 settlement award would go to him directly. Again, the Trustee stepped in, objected to the settlement, and eventually the adversary proceeding was handled by the Trustee. When the Trustee proposed a settlement with an award of $15,000 to the estate, Mr. Marmorstein objected. Now, he points to that settlement award as his substantial contribution to the case. Given the procedural history of this case, the Court finds that not only were Mr. Marmorstein's actions driven solely by self-interest, they were also sometimes to the detriment of the estate. While the Court acknowledges that the Trustee may not have been able to recover $15,000 for the estate if Mr. Marmorstein had not filed the adversary proceeding, the Court concludes that his efforts did not confer a direct and significant benefit to the estate. If a determination is made that Mr. Marmorstein is a creditor of the estate, the Court would allow the costs of $470.00 and $509.35 incurred by him because these costs could have been borne by the Trustee. Otherwise, Mr. Marmorstein's efforts do not warrant an award of administrative expenses.[6]

## Conclusion

For the foregoing reasons, the Court sustains the Objection to the Proof of Claim of Mr. Marmorstein in this Chapter 7 proceeding. The Court also finds that because Mr. Marmorstein's claim is disallowed, he is not a creditor of the Debtor and is therefore not entitled to an award of administrative expenses under § 503(b). In the alternative, the Court concludes that even if Mr. Marmorstein is a creditor, his application for administrative expenses is only allowed in the

---

[6] In his motion for administrative expenses, Mr. Marmorstein also cites to the Order issued by the Court on June 14, 2016, allowing him to retain counsel in the adversary proceeding. That Order was based upon the authority of 11 U.S.C. § 330(a), which permits reimbursement for attorney's fees if the attorney is employed by the bankruptcy trustee with approval of the bankruptcy court. *See Lamie v. U.S. Trustee*, 540 U.S. 526, 535 (2004). At the time, Mr. Marmorstein had been granted derivative standing by the Court to institute the adversary proceeding on behalf of the bankruptcy estate. That order is irrelevant to the motion brought by Mr. Marmorstein under § 503(b), which is before the Court today.

amount of $979.35 because he did not make a substantial contribution to the estate other than to incur expenses.

The Trustee is directed to prepare an order consistent with this Opinion and the entry of order procedures of this Court.

**Signed on May 14, 2018**



/s/ Daniel S. Opperman
**Daniel S. Opperman
United States Bankruptcy Judge**